STATE OF MISSOURI, at the Relation of J. S. LANE and LUCILLE LANE, His Wife, Relators, v. RILEY R. PANKEY, JOHN D. WASHBURN, and JESSE FOSTER, Judges of the County Court of Linn County, Missouri, No. 41324—221 S. W. (2d) 195.

Court en Banc, May 13, 1949.

*H. K. West* for relators.

*Marvin C. Hopper,* Prosecuting Attorney, and *P. M. Marr* for respondents.

CLARK, J.—Original proceeding in this court to prohibit respondents, composing the county court of Linn County, from exercising jurisdiction in a proceeding instituted in the county court

120

for the establishment of a change of public road so that the same will run through the lands of relators. The county court proceeding is in conformity with Sections 8473 to 8478, both inclusive, Revised Statutes Missouri, 1939, [Mo. R.S.A.] which purport to vest in the county court exclusive authority to establish and maintain public roads.

Those statutes were valid when enacted for the Constitution then vested county courts with judicial power and made them courts of record. Under the new Constitution adopted in 1945 county courts are administrative bodies entirely without judicial power.

Relators contend that the new constitution renders the statutes above mentioned invalid, because the establishment of public roads is a judicial function which county courts can no longer exercise.

Respondents, while conceding that county courts no longer have judicial power and that some phases of the establishment of public roads involve the exercise of judicial or quasi judicial power, contend that the new constitution does not invalidate the above statutes. Their reasoning is: that the main features of the establishment and maintenance of public roads are administrative county business and that Section 7, Article VI, of the new Constitution gives the county court exclusive authority to transact *all* county business.

Recently, in Rippeto et al. v. Thompson, 358 Mo. 721, 216 S. W. (2d) 505, Division One of this Court held that the authority to establish a private road comprehends judicial action which, under the new Constitution, a county court cannot perform.

Respondents say that case is not in point here because it relates to a *private* road, which is a matter between private persons and not a part of the county business. Respondents are partially correct in the distinction they make between private and public roads. They are also correct in asserting that many of the functions connected with the establishment and maintenance of public roads, properly fall within the term "county business" as used in the Constitution. But when it becomes necessary to exercise the power of eminent domain to take private property for the purpose of a road, either public or private, the judicial power of a court must be invoked. To that extent our decision in the Rippeto case is pertinent to the issues in the instant case.

The power of eminent domain is an inherent attribute of sovereignty to be exercised by such agencies, for such public purposes and in such manner as may be provided by law. [State ex rel. Highway Comm. v. Gordon, 327 Mo. 160, 36 S. W. (2d) 105; State ex rel. Highway Comm. v. James, 356 Mo. 1161, 205 S. W. (2d) 534.] Our statutes delegate to various agencies, including counties, the right to invoke the power of eminent domain, but uniformly provide that it must come to fruition by the judgment of a court. We think this is also a constitutional requirement for our Constitution, although

it does not *grant* the power of eminent domain, places various limitations and restrictions upon the exercise of the power and seems to contemplate that it be exercised judicially. We reach this conclusion not only from the "due process" provision, Article I, Section 10, but from Article I, Section 26, which provides that property shall not be taken until compensation shall be paid to the owner "or into court for the owner," and from Article I, Section 28, which provides that "whether the contemplated use be public shall be judicially determined."

■ There is a distinction between "public necessity" and "public use." The propriety and necessity for the location of a public road is a legislative and not a judicial question. [City of Kirkwood v. Venable, 351 Mo. 460, 173 S. W. (2d) 8, and cases cited.] The new Constitution, as construed in the Rippeto case and as we now construe it, invalidates no provision of existing statutes relating to the authority of county courts over public roads except such as purport to authorize the county court to exercise judicial power. A county court can no longer adjudge the compensation to be paid for lands to be taken for road purposes nor render judgment divesting title from the owners thereof. But ■ such court may take all statutory steps to determine the necessity, location, width and type of construction of public county roads, to determine whether same shall be constructed in whole or in part at county expense, and, when title has been legally acquired, to perform the administrative functions of supervising the construction and maintenance of such roads.

■ County courts may acquire the right-of-way for such roads by purchase or donation, but, if land owners are unwilling or unable to convey, the necessary right-of-way can be acquired only by condemnation proceedings in a tribunal having the necessary jurisdiction. Section 8486, Revised Statutes Missouri, 1939, [Mo. R. S. A.] and Laws of 1945, page 1469, Section 2518, [Mo. R. S. A.] expressly authorize a county court to institute such proceedings in a circuit court and provide a speedy and expeditious method of acquiring the necessary land for road purposes.

Section 8486 was enacted in 1919 and was amended in 1939 to correct a defect pointed out in our decision in Barker v. St. Louis County, 340 Mo. 986, 104 S. W. (2d) 371. The section authorizes the county court to institute condemnation proceedings in the circuit court for road purposes only.

Section 2518.1 was approved in April, 1946, and broadened the purposes for which the county court may institute condemnation in the circuit court to include not only roads, but drainage systems and other public purposes. Thus, the general assembly recognized that after the new Constitution should become fully effective on July 1, 1946, in accordance with Section 2 of its schedule, the county court would lose the power to render a judgment in condemnation.

122

In the instant case relators' petition alleges that the county court lacks authority even to determine the necessity for a public road, and our preliminary rule prohibits the county court from taking *any* action in the matter pending before it. As we have already indicated, that is too broad for the question of public necessity is within the jurisdiction of the county court.

However, the respondents by their return claim the power and indicate an intention of exceeding their jurisdiction by rendering a judgment which will take the land of relators.

Accordingly, our preliminary rule is hereby modified and made permanent so as to prohibit respondents from rendering a judgment or making an order purporting to divest relators of their title, and from taking possession of relators' lands until title has been acquired by voluntary conveyance or by valid judgment in condemnation. It is so ordered. All concur.