The STATE of Missouri, at the Information of John DALTON, Attorney General of the State of Missouri, at the Relation of J. L. TUCKER, George Cox, Vern Erwin, C. A. Hopkins, W. M. Allen, C. C. Kelso, C. C. Weatherly, C. H. Lewis, Sr., C. H. Lewis, Jr., W. D. Cameron, J. L. Fluty, Monroe Luckey, Walter Northcutt, Roy Stapleton, Ethel Griffeth and Jim Hongate, Appellants,

v.

Walter MATTINGLY, Rufus Barnhouse, Olin Antle and O. P. Murphy, Respondents.

No. 7361.

Springfield Court of Appeals.

Missouri.

Jan. 25, 1955.

Sater & Monroe, Monett, for appellants.

M. J. McQueen, Royle Ellis and Emory Melton, Cassville, for respondents.

RUARK, Judge.

This case, here by reason of transfer from the Supreme Court, 268 S.W.2d 868, is a quo warranto brought on the information of the Attorney General at the relation of certain taxpaying residents of the town of Exeter against certain other persons then functioning as aldermen of city.

On the 31st day of December, 1946, the County Court of Barry County incorporated Exeter, Missouri, as a city of the fourth class. Thereafter the city organized its government, held elections, selected its officers and proceeded to function as a body politic. On May 9, 1950, at a special election, a bond issue for a municipal waterworks system was authorized. Thereafter J. L. Tucker and other citizens filed an action in the Circuit Court of Barry County against the mayor and board of aldermen of said city for a judgment declaring that the incorporation of Exeter as a city of the fourth class was void because of the various reasons alleged therein and, on such theory, that the city was not an entity; that the defendants had no right or authority to function as officers of the city; and that all of the elections, ordinances, levies, collection of taxes and disbursement of funds were void. The prayer concluded with a request that the defendants be ousted and

enjoined from attempting to function as officers. Defendants first moved to dismiss the petition because the suit was brought by parties having no legal capacity to sue and because the petition failed to state a cause of action. Said motion to dismiss having been overruled, the case went to trial on defendants' answer and plaintiffs' reply. The judgment rendered was a general finding of the issues in favor of the defendants and that the plaintiffs take nothing by their petition but that the same be dismissed. On the same day the trial court filed its memorandum entitled "Statement of Court's Findings and Reasons for Decision." After the filing of motion for new trial plaintiffs appealed to the Supreme Court. On the 9th day of January, 1953, the appeal was dismissed because prematurely taken Tucker v. Miller, 363 Mo. 820, 253 S.W.2d 821.

Thereafter and on the 2nd day of March, 1953, the present suit was instituted by the filing of information in the nature of quo warranto, viz. The State of Missouri, at the information of John Dalton, Attorney General of the State of Missouri, at the relation of certain named persons who were, with two exceptions, the same persons who had been plaintiffs in the previous suit. The respondents were the incumbent aldermen of the city of Exeter (a vacancy being said to exist in the office of mayor). This pleading, although not in exact language, made substantially the same attack upon the original incorporation of the city of Exeter and assigned substantially the same various grounds therefor as had been set up in the first suit. It alleged defendants were usurping rights as officers of a city of the fourth class and concluded with a prayer that the court adjudge the defendants have no right or title to the offices, that the court find them to be usurping the same and that they be ousted therefrom. Thereafter two of the persons named as relators filed their motions alleging they had not authorized the use of their names and requested the court to strike their names as parties. On March 16, 1953, the respondents filed motion to dismiss wherein they alleged that the re-

lators were identical with those who had filed the previous action heretofore mentioned; that all issues raised by the present petition had been raised in the former suit, where the defendants had filed motion to dismiss and (then) took the position that plaintiffs did not have the right to maintain such suit and that the same could be maintained only by the Attorney General of the State of Missouri; that in the former suit the plaintiffs' attorneys had taken the position that such plaintiffs (relators here) were proper parties plaintiff and that it was not necessary that the State of Missouri or the Attorney General be made a party plaintiff; that the former suit was tried to the court and judgment was rendered in favor of the defendants and against the plaintiffs, which judgment necessarily disposed of all issues raised in the former petition; that such judgment was appealed, that the appeal was dismissed and thereafter the judgment of the circuit court became final and *res judicata* of all the issues in the present petition.

The motion further pleaded that the petition showed on its face that the city of Exeter was incorporated on December 31, 1946, more than six years prior to the filing of the instant suit, that there is no averment in the petition showing equity in favor of the state, and such petition should be dismissed for laches.

At a hearing on said motion the respondents offered in evidence the appellants' transcript on appeal with exhibits and the printed briefs of the parties in the former case of Tucker v. Miller. Thereafter on August 28, 1953, the trial court sustained the motion to dismiss and ordered the cause dismissed. Motion for new trial was filed and overruled and relators appealed from the judgment.

A parenthetical statement may help in understanding the situation:

It had been held by our Supreme Court that the incorporation of a city by the county court was a judicial act and therefore could not be attacked in collateral proceedings. On January 7, 1949, the Su-

preme Court rendered its opinion of Rippeto v. Thompson, 358 Mo. 721, 216 S.W. 2d 505, which plaintiffs interpreted as holding that, under the constitution of 1945, V.A.M.S., the county court had lost all power to make determinations which were judicial in their nature; hence, by plaintiffs' interpretation, the county court could not make the determinations necessary to organize a city, the city was therefore not a corporation, either de jure or de facto, and suit could be maintained by individual parties. However, on the 9th day of July, 1951, shortly before the Tucker case was submitted, the Supreme Court decided the case of In re City of Kinloch, 362 Mo. 434, 242 S.W.2d 59, which case had to do with the disincorporation of a fourth class city, and which held that a county court has jurisdiction to order the disincorporation of such city and that the powers so exercised were as legislative agent to hear and determine necessary facts and not an exercise of judicial power in the juridical sense.

Returning to the former case of Tucker v. Miller, which is the subject of the plea of res judicata, it appears obvious from the separate memorandum of the trial court that its finding and judgment was based solely upon the ground that the validity of the existence of a political subdivision can be questioned only by the state itself in a quo warranto proceeding. The court in this memorandum, after referring to the Kinloch case, stated that it "resolved this knotty question, at least by way of dictum. * * * In view of the foregoing decision, this Court finds the issues for the defendants in this cause." No other grounds or reasons were referred to in such findings and reasons.

■ The corporate existence of a municipal or public corporation, in the de jure or de facto exercise of its corporate life, must be challenged by the state itself in an information in the nature of quo warranto, and a suit by individuals is a collateral attack which cannot be counte-

nanced. Spiking School District No. 71 De Kalb County v. Purported "Enlarged School District, etc.," 362 Mo. 848, 245 S.W.2d 13; State ex rel. Le Shure v. O'Hern, Mo.App., 149 S.W.2d 914; State ex inf. Dorian ex rel. Black v. Taylor, 208 Mo. 442, 106 S.W. 1023.

But it is urged by the respondents that the Attorney General is a mere nominal party to the action, is not a real party in interest and that the addition of a formal party does not change its substance and, there having been a general finding on the issues in the former case, such is res judicata as to all of such issues.

We are first confronted with the question as to whether or not we may consider the trial court's statement of findings and reasons for decision along with its judgment making a general finding on the issues. Respondents say that we may not, and quote from Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d 282, loc. cit. 285, to the effect, "The rule is settled in this state that a memorandum opinion of the trial court is merely advisory * * * and does not constitute any part of the record proper." But that same court, and on the same page, continued its discussion as follows, "But in a suit for a declaratory judgment, as is this one, is it not the purpose of the suit to obtain from the court a declaration of the parties' rights? A mere judgment entry ordinarily cannot be responsive to the relief prayed for. It is not sufficient here." That court, in reviewing the judgment below, did not consider the memorandum.

Sec. 510.310 subd. 2,* provides, among other things, that in cases tried upon the facts without a jury, if any party shall so request, the court shall dictate or file a brief opinion containing a statement of the grounds for its decision, and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues. Subdivision 4 of the section provides that no findings of fact except such as shall have been spe-

* All statutory references herein are to RSMo 1949, V.A.M.S.

cifically requested are *necessary* for purposes of review. The section does not by its terms exclude the memorandum.

■ Stated as a general rule, a judgment, plain and unambiguous in its terms, may not be modified, enlarged, restricted or diminished by reference to the opinion or decision of the court; but it is generally held that the opinion may be considered on the question of construction and effect of the judgment, and the judgment may be construed in the light of the opinion. 49 C.J.S., Judgments, § 436, pp. 868, 869. Certainly where the memorandum was requested by a party it is proper for the appellate court to consider such. Prugh, Combest & Land, Inc., v. Linwood State Bank, Mo. App., 241 S.W.2d 83; Dye v. School District No. 32, 355 Mo. 231, 195 S.W.2d 874.

The Supreme Court in Hammond v. Crown Coach Co., Mo., 263 S.W.2d 362, criticized the line of cases, see Ponyard v. Drexel, Mo.App., 205 S.W.2d 267, 270, and cases cited, which accepted and considered the memoranda of the trial court. However, those cases, as well as the Hammond case, were jury tried, and in each of them the trial court had failed to specify of record the ground or grounds on which new trial was granted in accordance with the requirements of sec. 510.330 and sec. 510.-370. The Hammond case did not purport to deny the tenor of reasoning in the former cases which would well apply as a general proposition (as distinguished from an attempt to substitute the memorandum for compliance with the statute on motions for new trial). The expression in Ponyard v. Drexel, supra, loc. cit. 270, was, "But while a memorandum, or the oral statement of the judge, may not be used to dispute or as a substitute for a record entry showing the ground or grounds upon which a new trial was granted, it does not follow that an appellate court is in all events precluded from considering such memorandum or oral statement in determining precisely why the new trial was allowed. On the contrary, the filing of memorandum opinions is invariably encouraged and commended; and where the record entry is ambiguous, un-

certain, or incomplete, an appellate court may properly look to an accompanying memorandum (especially if referred to in the record entry), or to the contemporaneous oral statement of the judge, in so far as the same may throw light upon the view the court took of the case during its progress and at the time of its action in granting the new trial. This in accord with the settled principle that extraneous matters may be considered for the purpose of explaining or supporting a record entry, but not to oppose or contradict it."

We think there is more reason to apply the rule where the question of res judicata has arisen and it must be determined whether an issue has been settled in earlier litigation not involving the same character of action. This seems to be the general law (Judgments, 30 Am.Jur., sec. 284).

In Short v. Taylor, 137 Mo. 517, 38 S.W. 952, 953, the question was whether the action was barred by the force of an earlier judgment which was substantially the same as in the instant case, to-wit, "that plaintiff take nothing by this action, and that defendant have and recover of plaintiff of his costs." It was stated, 137 Mo. loc. cit. 526, 38 S.W. loc. cit. 954, "Where, however, the extent of the adjudication does not appear by the record, the proceedings may be looked into by evidence for the purpose of ascertaining the matter actually involved in the decision, so far as such inquiry may not conflict with the recitals or purport of the record. * * * Proof that that issue was not, in fact, decided, does not in fact contradict the record of the judgment in that cause. The stipulation makes it clear that that portion of the case remained undecided, and hence that the former judgment is no bar to the plaintiff's present suit. That result must follow whether we view the stipulation as strictly a part of the record, leading to the judgment, or as mere evidence to elucidate the scope of the judgment."

■ The findings of the trial court are in the transcript. They clearly show that the judgment of the court was rendered

only on and because of one proposition, to-wit, that the plaintiffs in that case could not, as individuals, attack the legal existence of the city. For this court to refuse to consider it would be to deny light where light exists. There was no adjudication of the other issues raised by the pleadings.

■ The prior adjudication being based upon inability to maintain the action and not upon the merits, it was not res judicata as to the issues not decided. Lilly v. Tobbein, 103 Mo. 477, 15 S.W. 618; Kirk v. Metropolitan Life Ins. Co., 225 Mo.App. 756, 38 S.W.2d 519; Heagerty v. Hawkins, Mo., 173 S.W.2d 923, and cases cited.

■ Nor is this action barred because plaintiffs in the previous case mistook their remedy and submitted their cause upon a forlorn theory. Pemberton v. Ladue Realty & Const. Co., 359 Mo. 907, 224 S.W.2d 383.

■ Moreover, even though we disregard the memorandum, the former judgment is not a bar. The parties now agree that the incorporation was by a county court having jurisdiction to make the order. The former suit was an attempt by individual citizens to attack the legal existence of a municipal corporation either de jure or de facto. This was a collateral attack and the plaintiffs had no right to maintain the suit. The respondents took this position in their briefs to the Supreme Court in the former case and briefed and argued the question ably. To sustain such position they cited numerous cases. Plaintiffs were, in the former suit, attempting to pursue a remedy which could be put in motion only by the officers of the sovereign state through quo warranto. By their petition they requested a judgment which the court had no power to give except upon and after the filing of information in the nature of quo warranto. A judgment rendered upon such petition, had it declared the incorporation void and ousted the officers from their positions, would have been void on its face. A court must have jurisdiction not only of the parties and subject matter but also jurisdiction to render the particular judgment or order involved. Maxey v. Maxey, Mo. App., 212 S.W.2d 810; Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S.W.2d 3, loc. cit. 9, 10; Smethers v. Smethers, Mo.App., 263 S.W.2d 60; Healer v. Kansas City Public Service Co., Mo., 251 S.W.2d 66; State ex rel. Lambert v. Flynn, 348 Mo. 525, 154 S.W.2d 52, loc. cit. 57.

■ A judgment void on its face cannot be used as a basis for the application of res judicata. This is held not to require citation of authority. State ex rel. National Lead Co. v. Smith, Mo.App., 134 S.W.2d 1061, loc. cit. 1068.

■ The petition in the former case did not state a cause of action for which relief could be granted to the parties. A judgment rendered on such a petition is unenforceable and subject to collateral attack. Guhman v. Grothe, 346 Mo. 427, 142 S.W.2d 1, and cases cited.

■ Respondents in their excellent brief nevertheless insist there is identity of parties; such contention being based upon the oft-repeated statement of the courts that the relators in a suit of this character are the "real parties in interest." It is true that *once the action has been legally set in motion* under the statute the relators are the interested parties and take control of the case; but the State of Missouri is a very real, necessary and interested parent at the birth of the cause. The original common law writ was the prerogative of the sovereign and it still is. By the provisions of sec. 531.010, V.A.M.S., the writ can issue only after information in the nature of quo warranto exhibited by the Attorney General or prosecuting attorney. This is a jurisdictional requirement. State ex inf. Dorian ex rel. Black v. Taylor, supra; State ex rel. Perkins v. Long, 275 Mo. 169, 204 S.W. 914; State ex rel. Le Shure v. O'Hern, supra.

In the Dorian case, supra, the court said, 208 Mo. loc. cit. 451, 106 S.W. loc. cit. 1026, "Now observe our statute (Rev.St.1899, § 4457) charges the Attorney General of the State and the prosecuting attorneys of the

respective counties with the duty of speaking in the name of this sovereign commonwealth 'in case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise.' In such case, in matters of initiative *they wield the bolt forged by the law,* [italics ours] no other hand may. They stand charged with the duty of exhibiting to the court an information in the nature of quo warranto, at the relation of any person desiring to prosecute the same."

And if relators were the real parties in interest, they were not parties of the same quality as the Attorney General. They attained such quality only when he clothed them and their action with raiment bearing the insignia of the sovereign, i.e., his information. Until this was done they, with the petition they carried, were mere interlopers at the court and were properly cast out.

We hold the previous judgment was not res judicata.

 Respondents contend that the evidence showed the dismissal should be sustained because of laches and cite us to State ex inf. Otto ex rel. Harrington v. School District of Lathrop, 314 Mo. 315, 284 S.W. 135. We are impressed by the holding of such case, those cited by it and the cases which cite, approve or distinguish it, in reference to the principle that the issuance of quo warranto is a matter of discretion which should be denied where there has been acquiescence, as is strongly indicated by the evidence in this case. But such evidence came into this case only via the transcript of record in the former case, which was tried upon an answer pleading both estoppel and laches. We have already said that the court in the former case did not pass on this question but limited itself solely to the question of whether the plaintiffs there had capacity to maintain the action. In the present case the question was decided on a motion to dismiss. The appellants repeatedly objected to such evidence on the general ground of "incompetent, irrelevant and immaterial" and preserved a continuing objection to reception of evidence as to estoppel (not here specifically pleaded). The applicable portion of the motion was that the petition on its face showed the suit was filed six years after incorporation, that there was no averment of equity (to explain or excuse waiting so long) and the petition should be dismissed for laches. We can interpret this only as a motion in the nature of a demurrer under sec. 509.300, which limits us to the face of the pleading and excludes a consideration of the evidence. It is not a speaking motion permitted under sec. 509.290.

 Laches is an affirmative defense, sec. 509.090. If the trial court in its discretion chooses to permit such in order to eliminate the taking of unnecessary evidence on other issues and thus shorten the trial, laches might be pleaded and proved as one of the "other matters" referred to in sec. 509.290. Metcalf v. American Surety Co., 360 Mo. 1043, 232 S.W.2d 526; Meisel v. Mueller, Mo.App., 261 S.W.2d 526; Hamilton v. Linn, 355 Mo. 1178, 200 S.W.2d 69, loc. cit. 71; Knight v. Calvert Fire Insurance Co., Mo.App., 268 S.W.2d 53, loc. cit. 55; Halloran v. Hackmann, Mo., 160 S.W. 2d 769.

 However, the motion here was aimed at the face of the petition. No matter how strongly we might believe the evidence indicates acquiescence, the relators were entitled to their day in court to explain or defend their position. We think they have not had that day when they are called into the courtroom to defend against a motion in the nature of demurrer and are there confronted with evidence which seeks to bar the action for reasons which do not appear on the face of the record.

For the reasons foregoing we conclude the case must be reversed and remanded for further proceedings. It is so ordered.

McDOWELL, P. J., and STONE, J., concur.