Elwyn L. CADY, Jr., Executor, Plaintiff-Appellant,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant-Respondent.

No. KCD 28516.

Missouri Court of Appeals, Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1977.

Application to Transfer Denied Sept. 12, 1977.

Elwyn L. Cady, Jr., pro se.

Glenn McCann, William J. Gotfredson, Kansas City, for defendant-respondent.

Before DIXON, P. J., and WASSER-STROM and TURNAGE, JJ.

DIXON, Presiding Judge.

Defendant received a general verdict on plaintiff's two-count petition in a court-tried case. Plaintiff's counts were for damages and specific performance. Plaintiff appeals, claiming in four separate points that the court erred in entering judgment on the specific performance count of plaintiff's petition. Judgment is to be affirmed on the authority of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The original plaintiff, Elwyn L. Cady, instituted the suit on June 10, 1965. After the original plaintiff died on December 15, 1970, his son and his wife, Elwyn L. Cady, Jr. and Annabelle L. Cady, co-executors of the senior Cady's estate, were substituted as the plaintiffs. Annabelle Cady died before trial. The case is brought by Elwyn L. Cady, Jr. as the sole plaintiff and executor of the senior Cady's estate. The case was twice removed to the Federal District Court for the Western District of Missouri. Each time it was remanded to the Jackson County Circuit Court because the amount of alleged damages was insufficient to invoke federal jurisdiction. The case was tried to the court on July 28, 1975.

The first of plaintiff's four separately numbered points may be readily disposed of. He urges that the court's order referring to "plaintiff's claim for damages" and in favor of the defendant is in error because the plaintiff limited his submission to his

claim for specific performance. The judgment order in pertinent part, reads:

"Based upon the evidence presented, the court does this 23rd day of September, 1975 find the issues in favor of the defendant and against the plaintiff and enters its judgment against the plaintiff on plaintiff's claim for damages and in favor of the defendant."

The judgment order states that it finds the issues in favor of the defendant and against the plaintiff. In *State ex rel. State Highway Commission v. Wiggins*, 454 S.W.2d 899, 901 (Mo. banc 1970), the trial court found " 'the issues against [appellant] and in favor' of respondents, . . ." On appeal the court held that the trial court did not err because:

"As a general rule, in the absence of evidence to the contrary a general judgment for one party involves a finding in that party's favor on all issues properly before the court."

In the plaintiff's first amended petition, he pleaded for damages and, alternatively, for specific performance. Furthermore, the plaintiff argued during the course of the trial that he was seeking specific performance. The issue of specific performance was properly before the trial court.

██ It is a general rule of construction of judgments that judgments should be construed " 'in light of situation of the court, what was before it, and the accompanying circumstances' . . . its meaning should be determined in light of the character and objective of the proceeding culminating in the judgment." *Jeans v. Jeans*, 314 S.W.2d 922, 925 (Mo.App.1958). Moreover, in construing a judgment, reference to the record as a whole, including any memorandum by the trial court, should be made in order to determine if the judgment has left any issues undecided. *Chuning v. Calvert*, 452 S.W.2d 580, 582 (Mo.App.1970); *State ex rel. Dalton v. Mattingly*, 275 S.W.2d 34 (Mo.App.1955); and *State ex rel. Anderson Motor Service Co. v. Public Service Commission*, 348 Mo. 613, 154 S.W.2d 777 (1941). After reviewing the entire record, it is clear that the court's judgment order finding "the issues against the defendant and in favor of the plaintiff" found against the plaintiff on all issues properly before it, including the issue of specific performance.

Thus, the procedural stance of this case is that the trial court has found the issues against plaintiff and in favor of defendant on both counts of plaintiff's petition. So considered, the issue to be determined under points 2 and 4 as briefed and argued by the plaintiff is the sufficiency of the evidence to support the finding against the plaintiff.

The plaintiff claims damage to three buildings located on a farm in Livingston County, Missouri. He contends the roof of the dwelling house, tool shed, and barn were damaged by a windstorm on June 29, 1960. The record is clear that the buildings in question were validly insured against windstorm damage by the defendant on the date in question. No one witnessed the alleged damage to the buildings by a windstorm. Mr. Cady, Sr. was not on the property when the alleged damage occurred. The elder Cady became aware that his property had been damaged by windstorm by a letter from Mr. Girdner, an insurance and real estate agent in Chillicothe, Missouri. Mr. Girdner acted both as Cady's agent to rent the dwelling house on the farm and as agent for defendant. In the letter of August 18, 1960, Mr. Girdner informed Cady that the roof of the dwelling house as well as the tool shed and barn had been damaged. Mr. Cady replied in a letter to Mr. Girdner telling him to have the defendant repair the damage but not build an entirely new roof on any of the buildings. A proof of loss form authorized by the defendant shows that the defendant offered to pay Cady $90 for the damage. The defendant estimated that the cost of replacing the roof of the house was $300. The defendant deducted $210 from the estimated cost in its offer to the plaintiff because it felt the roof had substantially depreciated in value at the time it was damaged. The defendant also contended that the roof of the house could not be repaired, as Cady had requested, but would have to be replaced.

The defendant's witness, John Ford, is an associate of Mr. Girdner. He testified that he is experienced in the roofing business, having been involved in contract roofing before he became associated with Mr. Girdner. He stated that he was familiar with the buildings which were allegedly damaged. He indicated that the plaintiff had previously made several claims for windstorm damage to the roofs of his buildings. Ford testified that from photographs which were shown him during trial taken of the buildings after June 29, 1960, and from his own personal knowledge of the buildings both prior to and after June 29, 1960, he saw nothing indicating damage to any of the roofs caused by wind. He testified that the condition of the roof of the house was caused by old age and deterioration. He testified that the roof of the dwelling house could not be repaired regardless of the cause of its damage, but could only be replaced.

■ Because the case was tried to the court, the court's judgment will be sustained unless there is no substantial evidence to support it, unless the judgment is against the weight of the evidence, unless the judgment erroneously declares the law, or unless the judgment erroneously applies the law. *Murphy v. Carron, supra* ; *City of Jefferson v. Smith*, 543 S.W.2d 547, 551 (Mo.App.1976). Determination of the credibility of the witnesses is for the trial court. *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74, 77 (Mo.App.1976).

As noted, the thrust of the plaintiff's argument under points two and four of his brief is that the trial court erred in finding against the plaintiff because sufficient evidence establishes that the alleged damage was caused by windstorm.

The plaintiff admits in his brief that the evidence that wind caused damage to his buildings is based upon the August 18, 1960, letter from Mr. Girdner to Mr. Cady. In the letter, Mr. Girdner states that Mr. Cady's buildings suffered damage by reason of the June 29, 1960, storm. The plaintiff contends that the letter by Girdner constitutes an admission by an agent of the defendant that the damage was caused by winds. Assuming, arguendo, that the letter from Mr. Girdner constitutes an admission by the defendant that windstorm on June 29, 1960, caused damage to the plaintiff's buildings, the judgment must still be affirmed because it is not the only evidence, and there is substantial evidence to support the judgment. *Murphy v. Carron, supra.*

■ The testimony of the defendant's witness, John Ford, indicates that the damage to the plaintiff's property did not occur by wind. Ford had had extensive experience in the roofing business with respect to dwellings and barns in the Livingston County area before he became an associate of Mr. Girdner. He testified that by reason of his experience in the roofing business, he was able to distinguish between damage caused by wind and other types of damage. He testified that he was familiar with the buildings which were on the Cady property. His testimony indicates that in the years prior to June 29, 1960, Mr. Cady had made several claims for windstorm damage to the roofs of his buildings. Mr. Ford identified certain photographs of the plaintiff's buildings in question. He stated that the condition of the roofs of the buildings in the pictures and as he had observed personally since June, 1960, did not result from windstorm but from natural deterioration. He testified that because of the conditions of the roofs, the roofs could not be repaired but only replaced, regardless of the cause of the damage. Mr. Livingston, a building contractor whose testimony was offered by deposition, testified that he examined the buildings in question on two occasions soon after the alleged storm. He testified that he could find no evidence of damage to the roof from the June 29, 1960, storm.

The plaintiff's evidence that the storm on June 29, 1960, caused damage to his buildings rests on two documents. The letter from Mr. Girdner of August 18, 1960, implies that Mr. Girdner himself had not personally observed either the storm causing the damage or the damage itself. The letter implies that the resident tenants on the farm informed Mr. Girdner after the storm

that the storm had caused damage to the buildings. As noted, his agency was dual, both for defendant and plaintiff.

The evidence indicates that the senior Cady left the farm on June 29, 1960, and never observed the damage. He did not estimate the monetary amount of the wind damage.

Moreover, no evidence indicates that the agent of the defendant who estimated in the proof of loss form that the replacement of the roof would cost $300, of which $210 would be depreciated, personally inspected the property damage. It appears he based this proof of loss on an estimate made by Mr. Livingston which Mr. Girdner had submitted to the defendant's agent.

The only two witnesses who had personally observed the plaintiff's buildings after June 29, 1960, testified that the condition of the roofs did not result from wind damage. Mr. Livingston, who inspected the buildings two times soon after the storm, testified that he believed the condition of the roofs resulted from natural deterioration, not windstorm damage. John Ford, who was familiar with the property both before and after June 29, 1960, testified that he did not believe the condition of the roofs was caused by wind damage.

Based upon the above record evidence, the judgment is supported by substantial evidence and is not against the weight of the evidence. The evidence does not compel the contrary finding, that a windstorm on June 29, 1960, caused the damage to plaintiff's property for which he seeks to hold the defendant liable.

Under the rule of *Murphy v. Carron, supra,* the *City of Jefferson v. Smith, supra,* and since the determination of the credibility of the witnesses was for the trial court, *Chemical Fireproofing Corp. v. Bronska, supra,* the judgment is sustained. The plaintiff's argument in point III of his brief regarding the effect of § 379.150 RSMo 1969, is theoretically correct but inapplicable because on this record proof of the existence and extent of damage caused by windstorm is insufficient to show that damage occurred to the plaintiff's property against which he was insured, as § 379.150 RSMo 1969, requires in order for it to be enforceable. The judgment is affirmed.

All concur.